JAMES B. GILMER, PLAINTIFF IN ERROR, v. GEORGE POINDEXTER.

On the 30th of January, 1835, Poindexter purchased from Thomas a right of entry in certain lands in Louisiana, with authority to locate the lands in the name of Thomas, and they were so located. Subsequently to such location, viz. on the 27th of November, 1840, Thomas, by notarial act, transferred to Poindexter all the right which Thomas then had, or thereafter might have, to the land so located, and authorized Poindexter to obtain a patent in his own name. The patent, however, was issued to Thomas, and not to Poindexter. This did not vest in Poindexter a *legal title*, which would enable him to recover in a petitory action, which corresponds with an action òf ejectment. Poindexter did not take a legal title, either by direct conveyance or by estoppel.

On the 20th of November, 1835, Poindexter, by a conveyance of record, conveyed his right in the lands in question to Huston, and on the same day, by articles of copartnership with Huston, not of record, authorized Huston to apply these lands for the mutual benefit of Poindexter and Huston.

A purchaser from Huston without notice is not affected by these articles.

THIS case was brought up, by writ of error, from the Circuit Court of the United States for the District of Louisiana.

On the 30th of June, 1834, Congress passed an " Act granting to General Philemon Thomas, of Louisiana, a tract of land, in consideration of the military services rendered by him in taking possession of that portion of West Florida included in the District of Baton Rouge." By this act, Thomas was authorized to enter, without payment, two sections of land on any of the lands of the United States in the State of Louisiana.

On the 30th of January, 1835, Thomas executed a deed to George Poindexter, in which, for the consideration of $ 7,500, he " granted, bargained, and sold unto him, the said George Poindexter, his heirs and assigns, for ever, all the right, title, interest, and claim whatsoever, which he, the said Philemon Thomas, may have, or might hereafter have, in and by virtue of the recited act of Congress ; and the said Philemon Thomas doth hereby authorize and empower the said George Poindexter to make the location or locations of the said twelve hundred and eighty acres of land for his own proper use and benefit, or proper use and benefit of his heirs or assigns, in the same manner, and with the same effect, as he, the said Philemon Thomas, might have done in his own name if this conveyance had not been made."

-22 *

On the 20th of November, 1835, Poindexter entered into articles of copartnership with one Felix Huston, in which it was stipulated; that Poindexter conveyed to Huston the right of entry yet remaining unlocated, so that the said entry may be made in the name of Huston, and the said Huston agreed on his part to purchase eight thousand dollars' worth of floats, and hold the whole for the joint and equal benefit of Poindexter and Huston. The articles contained other stipulations, but they were not recorded and executed in the presence of William Burns, an attesting witness.

On the same day, viz. the 20th of November, 1835, Poindexter executed a deed to Huston, from which the following is an extract: —

"And by these presents doth grant, bargain, sell, convey, and confirm unto the said Felix Huston, his heirs and assigns for ever, all the right, title, interest, and claim whatsoever, which he; the said George Poindexter, has, or heretofore may have had, or might hereafter have, in and by virtue of an act of Congress of the United States, approved June 30th, 1834, granting Philemon Thomas, without payment, the quantity of twelve hundred and eighty acres of land, to be located on any of the lands of the United States within the State of Louisiana, at the proper land office, with a proviso; that the same shall be located in tracts of not less than six hundred and forty acres, according to legal subdivisions; which said land was conveyed by the said Philemon Thomas to the said George Poindexter, by indenture entered into on the 30th day of January, A. D. 1835; which is of record in the District Court for the County of Washington, in the District of Columbia. And the said George Poindexter doth hereby authorize and empower the said Felix Huston to make the location or locations of the said twelve hundred and eighty acres for his own proper use and benefit, or the proper use and benefit of his heirs and assigns, in the same manner and with the same effect as he, the said George Poindexter, might have done in his own name, by virtue of the said act of indenture from the said Philemon Thomas to the said George Poindexter. And the said Felix Huston, being present, declares that he accepts this act with all its clauses."

This deed was recorded in the parish of Concordia.

On the 27th of November, 1840, Thomas and Poindexter executed the following instrument, viz.: —

"*State of Louisiana,*
*Parish of East Baton Rouge..*

"Whereas, on the 30th day of January, 1835, General Philemon Thomas, of this parish, for valuable consideration to him

in hand paid, sold and conveyed to me, George Poindexter, of the State of Mississippi, his right of entry, without payment, two sections of land on any of the lands of the United States, in the State of Louisiana, granted to the said Philemon Thomas by an act of Congress passed in the year 1834. And whereas, in order to complete the said location, the said Philemon Thomas executed to the said George Poindexter a power of attorney, with the right of substitution, authorizing the said location to be made in the name of him, the said Philemon Thomas ; which location, according to the tenor and effect of the said power of attorney, was made on two sections of the lands of the United States in township eighteen north, range ten west, and in township nineteen north, range thirteen and fourteen west.

" Now, therefore, in order to enable the said George Poindexter to perfect his title by withdrawing from the land office at Natchitoches the final certificate of said location, he, the said Philemon Thomas, hereby, for himself, his heirs, executors, and administrators, transfers to the said George Poindexter, his heirs, executors, and administrators, all the right, title, interest, and claim which he, the said Philemon Thomas, has, or hereafter may have, in and to the two sections of land located as aforesaid in the name of said Philemon Thomas, and further does authorize the said George Poindexter to obtain a patent for the lands so located in his own name at the General Land Office of the United States at the city of Washington.

" And the said George Poindexter, being here present, accepts this transfer made in his favor.

" In witness whereof, the parties have hereto set their hands with me, Charles R. Tessier, a notary public, duly commissioned and sworn for said parish, and in presence of Raphael Legendre and Victor Allain, witnesses duly qualified at Baton Rouge, this 27th day of November, 1840.

(Signed,)                                    PHILEMON THOMAS,
                                       GEORGE POINDEXTER.

" RAPHAEL LEGENDRE,
    VICTOR ALLAIN.
                    " CHARLES R. TESSIER, *Notary Public.*"

On the 26th of March, 1841, a patent, describing the lands, was issued by the General Land Office to General Philemon Thomas, his heirs and assigns for ever.

On the 10th of January, 1844, Huston executed a deed to James Washington Patten, residing in Buncombe County, North Carolina, reciting the origin of the title, and conveying 649$\frac{36}{100}$ acres to Patten, his heirs and assigns, to their proper

use and behoof, for ever.   This deed was duly executed and recorded.

On the 15th of January, 1844, Patten executed to James Erwin a full power of attorney, authorizing him to sell the lands upon such terms as he might deem proper, execute deeds, &c.

On the 28th of March, 1844, Erwin executed a deed to Gilmer, conveying the lands to him for $ 6,473.60, with a warranty of title.

On the 20th of February, 1847, Poindexter brought a petitory action in the Circuit Court of the United States for Louisiana, reciting the grant by Congress to Thomas, the deed from Thomas to himself, the location, and the patent.   By virtue of these documents, he claimed to be the legal owner and proprietor of the parcels of land therein described, and justly entitled to the possession thereof.

On the 31st of March, 1847, Gilmer answered.   He referred to his deed from Patton, through Erwin, and cited him in warranty.

On the 10th of May, 1848, the judgment of the court was pronounced on the law and evidence in favor of the petitioner. The documentary evidence was ordered to be placed upon the record.   The following bill of exceptions was taken, viz.: —

" Be it remembered, that, on the trial of this cause, plaintiff offered in evidence a paper purporting to be articles of agreement between plaintiff and one Felix Huston, and to have been signed and sealed by them, and purporting to bear date November 20th, 1835 ; said paper also purported to have been signed by one William Burns, as subscribing witness.   No testimony was offered as to the sealing or delivery of said paper, or the time when it was made ; the subscribing witness was not called to testify, but a witness was examined who testified that the names of said Poindexter and Huston, subscribed to said paper, were in the handwriting of said parties.   Witness knew nothing of the execution of said instrument.   Defendant, by his counsel, objected to the reception of said paper in evidence, on the ground that there was no proof whatever of the time when it was signed, nor of the sealing and delivery of the same.   Defendant objected also to the admissibility of said paper in evidence, even if the due execution thereof were duly proved, on the ground that it was a private act, not recorded, to which defendant was not a party, or of which he had notice; and on the further ground, that the effect of said paper in evidence would be to contradict, qualify, and explain the positive and direct admissions of plaintiff, made in his conveyance, by authentic act, to said Huston, on the 20th day of November,

1835; which said authentic act of conveyance had been offered in evidence by the defendant. The objections of defendant were overruled by the court, and the paper received in evidence; to which defendant, by his counsel, excepts.

" Be it further remembered, that, on the trial of this cause, defendant offered to introduce testimony to prove the value of the improvements made by him upon the land in controversy, in support of his answer and plea in reconvention; the court refused to receive or hear said testimony; to which refusal defendant, by his counsel, excepts, and tenders this, his bill of exceptions, and prays that the same may be signed.

" THEO. H. McCALEB, [SEAL.]
*U. S. Judge.*"

A writ of error, sued out by Gilmer, brought the case up to this court. It was argued by *Mr. Badger*, for the plaintiff in error, and by *Mr. Coxe* and *Mr. Crittenden* (Attorney-General), for the defendant in error.

The following points were raised by the counsel for the plaintiff in error.

First Point. The plaintiff has shown no title for the lands sued for. Those described in the petition, and those claimed by his deed of transfer from General Thomas, and those described in the patent to Thomas, are all different; and in this, a petitory action, the plaintiff must show title as in ejectment. 3 La. R. 134, 150; 14 La. R. 16; 7 La. R. 45; 8 Mart. N. S. 105.

Second Point. On the full disclosure of titles on both sides, as shown in the record, the defendant Gilmer has shown a complete legal title in himself. Freeman's Ch. R. 203; 2 Wheat. 197, 198, 199, 205. Or if not a legal title, a perfect equity protected as a legal title by estoppel, and by enuring of the patent in Thomas's name, to the use and support of the equity sold by him. 2 Howard, 316, 317; 6 Howard, 291; 12 La. R. 172, 173; C. C. art. 2451; 4 Yerger, 96; 2 How. (Miss.) 915; Walker's R. 97; Freeman's Ch. R. 181; 8 La. R. 109 13 La. R. 132.

Third Point. The partnership agreement between Poindexter and Huston, referred to in defendant's bill of exceptions, was inadmissible evidence for the plaintiff Poindexter; because a mere secreted counter-letter, contradictory of Poindexter's recorded conveyance to Huston, under which Gilmer claims (13 La. R. 132); and because equally contradictory and inconsistent with the title which Poindexter sets forth in his petition; and wholly impertinent to the issue made in the pleadings.

And also because there was no evidence of the execution of the said agreement admissible in law, — the subscribing witness not being called, or his absence accounted for, or any acknowledgment of the instrument by the parties present, or evidence of the fact of sealing and delivery. 2 Phil. Ev. 202, 203; McKinder *v.* Littlejohn, 1 Tred. 66.

Fourth Point. It is a manifest and palpable error, that the court below refused to permit Gilmer, under his plea in reconvention, to prove the value of his improvements as a purchaser in good faith, and which good faith is a presumption of law in Louisiana. C. C. art. 3447; C. P. art. 375; 17 La. R. 183; 4 La. R. 273; 8 La. R. 119, 120.

Fifth Point. It is error patent upon the face of the record, and independent of the evidence in the cause, or of the bill of exception filed, that the court has given no judgment affecting the party cited in warranty. C. C. art. 2493, 2494; C. P. art. 378 to 384. And the court had no right or discretion to postpone or to pretermit this judgment. C. P. art. 385; 10 La. R. 120; 2 Rob. 199, 200.

Sixth Point. It is error patent on the pleadings and judgment, that the court has awarded a recovery of lands not sued for or demanded in the petition. 1 Poth. Oblig. part 4, ch. 3, art. 2, § 1, p. 425; 1 Partidas, part 3, tit. 22, laws 15, 16, pp. 278, 279.

Seventh Point. It is error patent on the judgment, that no sort of reason is assigned for its rendition. Constitution of La. of 1845, art. 70; 5 Mart. 687 to 689; 4 Mart. 463, 464, 465; 11 La. R. 162.

*Mr. Coxe* and *Mr. Crittenden,* for the defendant in error, contended, —

1st. That the bill of exceptions was not taken in time. From the record it appears that it was not taken until after the trial had been concluded for some time, after motions for a new trial had been made, argued, and overruled.

The uniform practice upon this subject requires that the bill of exceptions must be tendered at the trial. 2 Tidd, 788; 4 Dall. 240; 1 Binney, 38; 10 Johns. 312.

This proceeding, introduced into the English law by the Statute of Westminster, 13 Edward I., is unknown to civil law, and to the courts which administer that system. It was introduced into the courts of Louisiana by special legislation, and, being thus borrowed from the English law, is taken with all its accompaniments and limitation.

There are several provisions in the Code of Practice relating to bills of exceptions:

Gilmer *v.* Poindexter.

Art. 487. If one of the parties calls upon the court to express an opinion on a point of law arising in the cause, such opinion may be excepted to.

Art. 488. The party excepting to the opinion of the court must draw a bill of exceptions, in which the question of fact or of law, on which such opinion has been demanded, may be concisely set forth, as well as the grounds of the exception so taken.

Art. 489. The bill of exceptions must be exhibited to the adverse party, &c.

In this case it does not appear that the adverse party knew any thing of the matter.

The objection, as stated, is inferred from the language of the bill of exceptions, but is given, not in the form of an objection, but as a statement of facts. Now, as it does not appear what other evidence had been given, the bald question is raised whether, under any circumstances, a sealed instrument is admissible in evidence on proof of the handwriting of the parties. Carroll *v.* Peake, 1 Peters, 22, 23.

Upon the principle that the opinion of the court below must be regarded as sound until its incorrectness is made to appear, the plaintiff in error cannot prevail, unless he can show that no case could have existed in which the paper objected to could be considered in the light of an original document.

In that case, the court, to sustain the judgment, would suppose that a paper, confessedly a copy, had been proved to be equal in credit to an original. Here they will presume it necessary that evidence was given which showed that the subscribing witness was dead or beyond the reach of the court, and that his handwriting could not be proved. In such a case, proof of the handwriting of the parties was the only evidence which could be given, and the best the circumstances of the case permitted, and was therefore competent. Long *v.* Ramsay, 1 Serg. & Rawle, 72.

It was held that a subscribing witness was not necessary to the validity of a deed, and that proof of the handwriting of the obligor was sufficient. 2 T. R. 41.

Where a deed has come out of the hands of the other party, no proof of execution is necessary. 7 Taunt. 251; 8 Gill & Johns. 511.

In Maryland, the execution of an instrument in writing, to which there is a subscribing witness, may be proved without calling said subscribing witness, though present in court (this by statute). The case here was in Louisiana, where the rigid rules of the common law are not recognized.

3. This does not, however, seem to have been made a ground

of objection; the specific objection is, that no proof is given of the time when the paper was signed, nor of the sealing and delivery.

The answer to this is, the paper being proved, it proves the time by its date, and the sealing and delivery. The objection would be equally applicable in a case where, the death of the subscribing witness being proved, his handwriting was proved.

The next distinct objection is, that it was a private act, not recorded, to which defendant was not a party, and of which he had notice.

How far these objections were sustained in point of fact must depend upon the evidence which had been given. As we are utterly uninformed upon that point, it is impossible for this court to say that any error has been committed. It is clear that such a paper needed no record to give it validity, as between the parties and those who, before they purchased and paid the purchase-money, were apprised of its existence. The language of the bill of exceptions is so ambiguous, that it is by no means clear that any notice had at any time been given to defendant, when such notice was given, or merely that he was not notified at the date of the execution of the paper.

Mr. Justice DANIEL delivered the opinion of the court.

This is a writ of error to a judgment of the Circuit Court of the United States for the District of Louitiana.

The defendant in error instituted a petitory action in the court just mentioned, to recover certain lands in Louisiana in the possession of James B. Gilmer, the plaintiff in error.

The petition of Poindexter sets forth, that by an act of Congress approved on the 30th day of May, 1834, entitled "An Act granting to General Philemon Thomas a tract of land in consideration of military services, &c.," the said Thomas was authorized to enter, without payment, two sections of land on any of the lands of the United States in Louisiana. That Thomas, on the 30th of January, 1835, sold to the petitioner this right of entry, and authorized him, or his substitute, to make the location in the name of Thomas. That the petitioner afterwards caused said location to be made on two sections of land in Louisiana, north of Red River, one of which (described in parcels) contained $619\frac{36}{100}$ acres, and is the land in controversy.

That after this location, viz. on the 27th of November, 1840, Thomas by notarial act transferred to the petitioner all the right, title, &c., which he, Thomas, then had, or thereafter might have, to the two sections so located, and authorized the petitioner to obtain a patent therefor in his own name. That on

the 26th of March, 1841, a patent was issued for the lands to
Thomas, by virtue of which, and of the sale and transfer of
the 27th of November, 1840, the petitioner avers that he be-
came the legal owner of the lands claimed, and is entitled to
the possession thereof.   That Gilmer has taken unlawful pos-
session of one section of the land in township 19, range 14,
and refused to surrender it to the petitioner, who therefore
prays judgment for possession of the land, and for rents and
profits.   The agreements between Thomas and Poindexter of
the 30th of January, 1835, and of the 27th day of November,
1840, and the patent to Thomas of the 26th day of March,
1841, referred to in the petition, were filed as exhibits there-
with.

The tenant in possession, Gilmer, after a general denial in
his answer of any right or title to the land in the petitioner,
alleges that he is the possessor and true owner of the land
claimed, by purchase in good faith for valuable consideration
from James W. Patten, by a notarial act executed in New
Orleans on the 28th of May, 1844; that Patten's conveyance
to him was with general warranty, and he therefore avouches
Patten in warranty; and prays that, in the event of his eviction,
he may have a recovery over against his warrantor, Patten, for
the value of the land and improvements made by the defend-
ant.   This cause, according to the practice in the State of
Louisiana, was tried by the court, without the intervention of a
jury, and the court, after hearing the parties, by its opinion ex-
pressed on the 10th day of May, but signed on the 28th of June,
1848, and considered as of the day last named, gave the follow-
ing judgment, viz.: — " It is ordered, adjudged, and decreed,
that judgment be rendered in favor of the plaintiff, George
Poindexter, and against the defendant, James B. Gilmer, for
the premises described in the plaintiff' petition, and that the
said Gilmer surrender to the plaintiff the possession of the
following described parcels of land, &c., and that the plaintiff
have a writ of *habere facias possessionem* to place him in legal
possession thereof.   The right of the plaintiff for mesne profits
and of the defendants to sue for improvements, is reserved re-
spectively."

In addition to the documents above mentioned, filed as ex-
hibits with the plaintiff's petition, there was offered in evidence
on the part of the petitioner, and admitted by the court, an in-
strument of writing executed on the 20th day of November
1835, between Poindexter and one Felix Huston, in which it
was amongst other things recited, that the parties to that in-
strument had formed a partnership for the purposes of pur-
chasing lands of the United States, or preemption rights, or en-

tries of individuals, for the joint and mutual benefit of the parties; and that the said Poindexter, having purchased of General Philemon Thomas his right to locate the quantity of twelve hundred and eighty acres of land on any of the public lands in Louisiana, granted by an act of Congress passed on the 30th of June, 1834, and having obtained of the said Thomas, on the 30th of January, 1835, a conveyance of his said right of entry, which yet remains unlocated, the said Poindexter agreed to convey to the said Huston his right of entry derived under the said deed, in the same manner as he acquired the same from the said Philemon Thomas, so that the said entry may be made in the name of the said Felix Huston, to be held by him for the joint and equal benefit of him the said George Poindexter, &c. This instrument, being a private declaration of trust between Poindexter and Huston, not evidenced by any record or other public acknowledgment of the parties, was attested by a single witness, William Burns, who was not called at the trial to prove its execution, was received in evidence by the court without such proof, and its reception was excepted to for that cause. It does not appear, moreover, that a knowledge of this instrument was brought home either to Patten or to Irwin, his attorney in fact, from whom Patten purchased.

The plaintiff in error relied in the Circuit Court on the following proofs: — 1st. On the act of Congress granting the right of entry to Thomas. 2dly. On the public act and conveyance from Thomas to Poindexter, as recited in the petition. 3dly. The plaintiff in error next adduced in proof a public and authentic act of sale and conveyance, on the 20th of November, 1835, to Huston, in absolute right, of all his, Poindexter's, title, interest, and estate in the grant to Thomas, then vested, or which might vest at any future period. 4thly. The public authentic act of Huston, conveying the land in controversy with general warranty, on the 20th of January, 1844, and reciting in its terms the conveyance from Thomas to Poindexter of the 30th of January, 1835, and that of Poindexter to Huston of the 20th of November, 1835, and describing the land so conveyed as that "which was located by said Huston according to the provisions of the above-mentioned act of Congress." 5thly. The public authentic act of Patten, constituting Irwin his attorney in fact to sell and convey the lands purchased of Huston. And 6thly, and lastly, the conveyance by Patten, by his said attorney, Irwin, of the lands in controversy to Gilmer, the tenant in possession in March, 1844, with warranty.

In considering this case, it is proper to carry with us throughout, as a standard by which to test the proceedings in the Cir-

cuit Court and the decision founded upon them, this controlling principle, — that the petitory action is a proceeding at law for the recovery of property, and can be maintained in the courts of the United States only where the right of possession can be shown, and, according to the principles and distinctions settled in this court, corresponds in character with the action of ejectment at common law.

The petitioner or plaintiff, therefore, in a petitory action, must recover upon the strength of his title, and that must be a legal, as contradistinguished from an equitable title. See United States *v.* King et al., 7 How. 846, 847, and Livingston *v.* Story, 9 Peters, 632. Tried by this rule, we are unable to perceive how the claim of Poindexter, as set forth in his petition, even if unaffected by his transactions with Huston, can be maintained in this action. The petitioner alleges that he purchased of Thomas his right of entry in virtue of the act of Congress, and received from Thomas a power to make a location in the name of the latter.

By this transaction, no legal title to any certain or specific land was conveyed, for nothing specific or certain was then vested in Thomas, and the power of locating alleged in the petition was a power to locate, not in the name of Poindexter, but in that of Thomas. The petitioner proceeds to state, that, after these locations made by him, Thomas, by an authentic act before a notary public, on the 27th of November, 1840 (a copy of which is filed with the petition), transferred to the petitioner all the right, title, &c., which he then had, or thereafter might have, to the sections of land located in his name, and authorized the petitioner to obtain a patent therefor. He further alleges, that afterwards, viz. on the 26th day of March, 1841, a patent issued to Thomas for the lands located as aforesaid in his name, and that by virtue of these proceedings, viz. the transfer by Thomas in 1840, and the patent in 1841, the petitioner became invested with the legal title to the land in dispute. This alleged investiture of the legal title must have been supposed to rest upon an estoppel operated by the transfer and patent before mentioned, for, independently of such an operation, and by the literal terms of the patent, the title would certainly be in Thomas, and not in Poindexter. But we are of opinion that in this instance no estoppel has been operated. This legal effect can occur only where a party has conveyed a precise or definite legal estate or right, by a solemn assurance, which he will not be permitted to vary or to deny. It can have no operation to prevent the denial of an equitable transfer or title, which is not identical with the legal title or muniment of title which it may be relied on either to estab-

lish or protect. An estoppel, it is said, should be certain to every intent, and therefore, if a thing be not directly and precisely alleged, it shall not be estopped. Co. Lit. 303 *a*, 352 *b*. So, too, it is laid down, that to the success of an estoppel it is obviously necessary that the grantor's want of a present vested estate should not appear on the deed itself, which would else contain internal evidence of its invalidity. 2 Sim. & Stu. 519; 3 Adol. & Ell. 12. And with regard to the mode of using an estoppel, it is said that it must be pleaded if there be an opportunity; otherwise, the party omitting to plead it waives the estoppel. See 2 Smith's Leading Cases, 457, and the authorities there cited. Again, it is ruled, that an equitable title cannot be estopped by a verdict at law, for there is no such thing as an estoppel in equity. See Com. Dig. *Estoppel* (§ 1). Even upon the hypothesis, then, that the title set up by Poindexter under his agreement with Thomas could be regarded as a legal title, still upon a comparison of the description of the property contained in those agreements with that of the land granted by the patent to Thomas, there is not that certainty and identity that are required by an estoppel, or such as will cause the land granted by the patent to Thomas to enure to Poindexter. But the right set up by Poindexter under his contracts with Thomas remains strictly an equitable right, and therefore neither Thomas nor his alienee could be estopped from averring a right in the land contained in the patent, in opposition to such equitable claim.

But in another aspect of the question, supposing the interest transferred to Poindexter by the agreements with Thomas of January 30th, 1835, and May 14th, 1839, could be so construed as to have passed to the former a legal title; and admitting, too, that the description of the property contained in those agreements accorded in precise terms with that of the lands granted to Thomas by the patent of March 20th, 1841, it would still remain to be inquired, whether Poindexter has not parted with his title, and would not in this aspect of the case be estopped from setting it up against his alienee, and all claiming under such alienee.

It appears from the evidence which was before the court, and already adverted to in the statement of this case, that on the 20th day of November, 1835, Poindexter sold and conveyed, by his public authentic act, and in absolute right and estate, to Felix Huston, all the right, title, interest, and claim which he then had, or thereafter might have, in and by virtue of an act of Congress of the 30th of June, 1834, granting to Philemon Thomas the quantity of twelve hundred and eighty acres of land, to be located on any lands of the United States in Lou-

isiana, which said land was conveyed by the said Philemon Thomas to the said George Poindexter on the 30th day of January, 1835; it further appears, that from Huston a regular title, by public authentic acts and written assurances, is deduced down to the defendant in possession, Gilmer. It is true that, in order to countervail the force of this title, the petitioner offered in evidence the agreement between himself and Huston of the 20th of November, 1835, creating a partnership between themselves, and purporting to convey to Huston all the title of Poindexter to the right of entry granted by act of Congress to Thomas, to be disposed of and applied by Huston for the benefit of the partnership; but it is equally true, that this instrument, which was objected to by the plaintiff in error, was received without legal proof of its execution, and therefore should not have been admitted and considered by the court; and there being no proof in this record of any knowledge of the contents, or even of the existence, of this instrument on the part of the purchasers under the absolute and public deed from Poindexter to Huston, their title thus derived, for aught that appears, cannot be affected by the former instrument.

Upon the whole case, the petitioner in the Circuit Court, having failed to establish a legal title in himself to the premises demanded, could not maintain his action, and the judgment of the court should have been for the defendant. It is therefore the opinion of this court, that the judgment of the Circuit Court be, and the same is hereby, reversed.

### Order.

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the District of Louisiana, and was argued by counsel. On consideration whereof, it is now here ordered and adjudged by this court, that the judgment of the said Circuit Court in this cause be, and the same is hereby, reversed, with costs, and that this cause be, and the same is hereby, remanded to the said Circuit Court, for further proceedings to be had therein, in conformity to the opinion of this court.