### DYNAMIC BALANCING MACH. CO. et al. v. AKIMOFF et al.

(District Court, E. D. Pennsylvania. February 20, 1922.)

No. 2131.

**1. Patents ⚖129—Assignor of application estopped to deny validity of claims granted within the scope of the application.**

The assignor of an application for a patent, and equally a corporation which he organized and controls, is estopped, as against the assignee, to deny the validity of a patent subsequently granted thereon as to claims within the scope of the original disclosure, though not made in the application as filed, but not as to claims not within the scope of such disclosure.

**2. Patents ⚖328—1,296,606, claims 21–23, 26, and 29, held void, as not within scope of application.**

The Akimoff patent, No. 1,296,606, for a balancing machine, claims 21, 22, 23, 26, and 29, which were transferred to the application from another application filed more than a year later, without a new oath, *held* void, as not within the scope of the disclosure made in the original application.

**3. Patents ⚖328—1,296,610, for balancing machine, claims 15 and 16, held void, and claims 12 and 13 valid, as against assignor of application.**

The Akimoff patent, No. 1,296,610, for a balancing machine, claims 15 and 16, which are method claims, added by amendment without further verification, *held* void, as too broad, and because the original specification made no claim for method. Claims 12 and 13, also added by amendment without further oath, but which are within the scope of the original disclosure, *held* valid, as against the assignor of the application, and also infringed.

---

In Equity. Suit by the Dynamic Balancing Machine Company and others against Akimoff and others. Decree for complainants.

Robert M. Barr, of Philadelphia, Pa., for plaintiffs.

James C. Wobensmith, of Philadelphia, Pa., for defendant.

THOMPSON, District Judge. This is a bill for an injunction to restrain the infringement of letters patent No. 1,296,606 and 1,296,610, both granted March 11, 1912, and issued to Dynamic Balancing Machine Company, one of the plaintiffs, as assignee, by mesne assignments of the applications of Nicholas W. Akimoff, one of the defendants. The plaintiffs Carlson-Wenstrom Company, Lippincott-Carwen Corporation, and Tinius Olsen Testing Machine Company are licensees under the patents. The defendant Nicholas W. Akimoff is the president of the defendant Vibration Specialty Company. The claims in issue are Nos. 21, 22, 23, 26, and 29 of patent 1,296,606, and claims 12, 13, 15, and 16 of patent 1,296,610. The defendant Akimoff while an employee of the Dynamic Balancing Machine Company made application for a number of patents, some prior in date to these in suit and some later, and including the patents in suit, relating to determining the unbalance of rotating bodies, in order to correct the unbalance, so that under rotation such bodies will not cause vibration, but will run true under operating speeds. An unbalanced body, having more weight on one side than on the other, will, when under rotation, cause vibration, and the purpose of the invention is to ascertain the location and amount of the excess mass, so that it can be removed, or an equal mass be added to the lighter side to establish the balance.

Claim 22 of patent No. 1,296,606 may be taken as illustrative of all of the claims in issue under that patent. It is as follows:

"A balancing machine, comprising (1) an oscillator limited to one degree of freedom; (2) a rotatable support mounted thereupon, this oscillator being operative to indicate the state of balance of a body carried by said support; (3) means movable in synchronism with said support, to impose upon said oscillator a forced vibration of desired frequency and amplitude; and (4) means to drive said support and said first means (3) synchronously."

In patent 1,296,610, claims 12 and 13 are for a balancing machine, and 15 and 16 are for methods for determining unbalance. Claim 13 is as follows:

"A balancing machine, comprising (1) an oscillatory mounting; (2) means for rotatably supporting a body to be tested and carried by said mounting; (3) rotatable radially adjustable means, also carried by said mounting, and operative to impose upon said mounting a variable forced vibration, to neutralize the vibration imposed upon said mounting by a body when unbalanced and rotating upon said support; and (4) connections whereby said last means is made to rotate in synchronism with, and operative to test the balance of, a body upon said first means."

Before discussing the question of infringement, the question of estoppel from attack by the defendants upon the validity of the patents in suit will be considered. The defendants contend that, without attacking the validity of the patents in suit, they have shown that defendants' machine is not within the scope of the patents in suit, but is composed of elements prior in the art, and that its elements cannot be read upon any of the claims of the patents in suit. Another defense set up

is that the claims in suit were introduced into the patents after the assignment and are not within the scope of the inventions disclosed. This latter defense is a serious attack upon the assigned patents, and has had careful consideration.

[1] The well-established rule is that an applicant or patentee, who assigns his application or patent, cannot be heard to deny its validity as against his assignee, nor can the corporation which he organizes and controls. Marvel v. Pearl et al. (C. C.) 114 Fed. 946; Continental Wire Fence Co. v. Pendergast (C. C.) 126 Fed. 381; Coal & Coke By-Products Co. v. Ernst (D. C.) 212 Fed. 434; Noonan v. Chester Park Athletic Club, 99 Fed. 90, 39 C. C. A. 426; Rollman Manufacturing Co. v. Universal Hardware Works (D. C.) 207 Fed. 97. It is also well settled that the assignor of an application for a patent is estopped as against the assignee from questioning the validity of a patent, application for which subsequently eventuates in a patent as to claims within the scope of the original disclosure, though not made in the application as filed. Foltz Smokeless Furnace Co. v. Eureka Smokeless Furnace Co., 256 Fed. 847, 168 C. C. A. 193. As to claims not within the scope of the original disclosure, it cannot be successfully contended that estoppel applies. As the estoppel, if it exists, arises out of the assignment, Akimoff's assignees or their privies took no more than he had the right to assign, and it must be established, if the assignor has introduced claims not set out in the application, that they were nevertheless within the scope of the disclosures of the inventor.

The plaintiffs introduced in evidence certain findings in a suit between the parties in court of common pleas No. 1 of Philadelphia county, being a bill for specific performance of a contract to assign future improvements in the art, into which it was alleged Akimoff had entered when he sold the inventions covered by the patents in suit. The testimony in that case was not introduced at the hearing in this case, but only the findings of the trial judge. The suit, so far as appears, stopped there, without prosecution to final judgment or decree. Hence it is not entitled to weight as res judicata. The evidence in the present case, without the aid of those findings, does not establish such a contract, and the case therefore is left with but the bare assignment of the inventions covered by the applications for patents. The file wrappers of the two patents in suit, which were offered in evidence, conclusively show the following facts:

[2] Patent No. 1,296,606 was applied for November 4, 1915. Patent No. 1,296,610 was applied for December 18, 1916, over 13 months after the first patent. The claims of patent 1,296,606, as originally drawn, all provide in varying terms for a rotatable body, revolvable upon an axis out of coincidence with the axis of rotation of the rotatable support for the body to be tested, and the application on page 1, beginning at line 391, sets out:

"In the present construction, the object is to revolve the balanced body of the first application upon an axis preferably parallel, but out of coincidence with, and removed from, the axis of revolution of the body being tested, but directly connected in such manner that the two bodies revolve in absolute synchronism, the entire structure being mounted upon yielding members, such as helical springs having predetermined periods of natural vibration."

The claims, 21 to 24, of patent No. 1,296,606, were transferred from the application for patent No. 1,296,610, the other patent in suit, by an amendment dated December 4, 1917, and claims 26 to 29 were inserted upon revival of the application, after it had become forfeited for failure to pay the final fee, July 6, 1918. All of this was done without Akimoff's consent or knowledge, and the effect of it was to carry back, over 13 months, claims first applied for in the later patent, and to insert them as additional claims of the prior invention.

Without discussing the voluminous correspondence between the attorney for the assignor and the Patent Office, the claims thus introduced cannot be held valid, even with the most scrupulous regard for the finality of the decisions of the Patent Office, if they violate the provisions of the patent laws in introducing what is, in effect, a new invention under an application of an earlier date. If they were within the scope of the original application, however, they were properly allowed. An examination of the original, however, shows in the specifications, claims, and drawings a limitation of the revolution of the body to be tested upon an axis out of coincidence with the axis of rotation of the body, having adjustable means to cause forced vibration. The claims in suit contain no such limitation and are therefore broader than, and beyond the scope of, the claims and of the disclosures appearing in the specifications and drawing of the application as originally filed. None of these amendments were accompanied by the oath of the inventor, and therefore the claims in suit in patent No. 1,296,606, namely, claims 21, 22, 23, 26, and 29, must be declared void. American Lava Co. v. Steward, 155 Fed. 731, 84 C. C. A. 157; Id., 215 U. S. 161, 30 Sup. Ct. 46, 54 L. Ed. 139; Railway Co. v. Sayles, 97 U. S. 564, 24 L. Ed. 1053; Eagleton Co. v. West Co., 111 U. S. 490, 4 Sup. Ct. 593, 28 L. Ed. 493; Cleveland Co. v. Detroit Co. (C. C.) 131 Fed. 740; Kintner v. Atlantic Co., 240 Fed. 716, 153 C. C. A. 514.

[3] In patent 1,296,610, the claims in issue, 12, 13, 15, and 16, were inserted after various amendments, and after the application was revived; it having become forfeited for failure to pay the final fee, on July 6, 1918. In the specifications, the applicant, Akimoff, had made no claim for a method patent, and an examination of claims 15 and 16 discloses that they are so broad and indefinite in their terms as to cover the whole field of the prior art in dynamic and static balancing. They are, as are the claims held void in patent 1,296,606, unverified, and must therefore be held void under the authority of American Lava Company v. Steward, supra. As to claims 12 and 13, however, although inserted by amendment long after the assignment, it is not clear that they are broader in scope than the original disclosure in the specifications and claims originally filed, and under the authority of Foltz Smokeless Furnace Co. v. Eureka Smokeless Furnace Co., supra, the assignor is estopped from questioning their validity, and they must be held valid as against the present defendants, although without supplemental oath.

The defendants' machine claimed to infringe differs from the plaintiffs' machine in many respects. First, it is not assembled as a complete unitary machine when shipped for use; but that will not avoid infringement, if it has, when set up and ready for operation, the es-

sential elements of the plaintiffs' machine, as constructed under claims 12 and 13 of the patent in suit. Reading it upon claim 13, it has (1) an oscillatory mounting, which, if the claim is to be construed as based upon the specifications and drawings, coincides with the plaintiffs' construction in being limited to one degree of freedom. It has also element (2), means for rotatably supporting a body to be tested and carried by said mounting. The rotatable support in the plaintiffs' machine is a rotatable spindle, upon which the body to be tested is revolved while supported by the spindle at each end upon upright supports. In the defendants' machine the body to be tested is supplied with a shaft and is supported at each end upon a pair of revolving rollers. The mounting of the rollers at one end is rigidly fixed, and those at the other end are mounted upon a base resting upon springs. The defendants' machine, therefore, differs from the plaintiffs' machine, in that no platform is provided with hinges at one end and springs at the other as an oscillatory mounting; but the body to be tested itself is so mounted that it has a fixed end, so far as oscillation is concerned, but at the other end are the supporting springs, causing oscillation of the body itself, and of the base upon which the rollers are mounted.

In the plaintiffs' machine the platform oscillates because it connects the hinge at one end and the springs at the other end. In the defendants' machine the mounting oscillates when a body is being tested, because the body to be tested connects the rotatable support upon its fixed base at one end, with the rotatable support imposed upon springs at the other end. In other words, there can be no oscillation until the body to be tested is mounted through its shaft being imposed upon the rollers of the defendants' machine. Neither can oscillation take place in the plaintiffs' machine until the body to be tested is mounted upon the spindle; but in either case the oscillation occurs because the body to be tested is out of balance. The fixed rotatable support is the mechanical equivalent of the hinged support of the plaintiffs' platform, and the rotatable support mounted upon springs is the equivalent of the end of the platform in the plaintiffs' machine mounted upon springs.

Taking up element (3) of claim 13 in the plaintiffs' machine: It has a normally balanced body, which may be radially adjusted to unbalance it, and is not mounted upon the same rotatable supports as the body to be tested, but is mounted upon shafting parallel with, but out of coincidence with, the body to be tested. It is, however, revolved by the same means as that causing the revolution of the body to be tested, being connected by shafting and coupling, so that the two bodies rotate in synchronism. In the defendants' machine a carrier, consisting of a clamp normally balanced, is attached to the shaft of the body to be tested. It rotates identically with the body to be tested, and therefore must rotate in synchronism with it. It is provided with adjustable weights operated by means of screws, by means of which it may be unbalanced, and is therefore radially adjustable. It is carried by the same mounting as the body to be tested, as it is attached to that body. Through adjustment of the weights, it is, when in rotation, operative to impose upon the mounting a variable forced vibration, the effect

of which is to neutralize the vibration imposed upon the mounting by the body to be tested when unbalanced and rotating upon the supports.

Element (4), the connection whereby the said last means is made to rotate in synchronism with and operative to test the balance of a body upon said first means, is in the plaintiffs' machine the shafting connection between the body of known balance and the spindle, upon which the body to be tested is mounted. In the defendants' machine the connection is direct, the carrier being borne upon the shaft of the body to be tested; but it is none the less a connection whereby the two bodies rotate in synchronism with each other and is operative to test the balance of the body to be tested. In the specifications, it is said:

"Specifically, the present machine consists, not only of a correcting weight, or equivalent balancing body, of means for indicating vibrations, and of means whereby the testing and balancing bodies are run in synchronism, but of an oscillator having one degree of freedom only, especially constructed to positively manifest in a most rigid manner the presence or absence of both static and dynamic unbalance.

"The embodiment in a machine of such a principle in its broad sense permits of innumerable different arrangements or constructions, and it should not be considered that the following description of one form of mechanism implies the limitation of the said principle and its adaptation to only this narrow interpretation, but, on the contrary, simply shows in a concrete manner one way in which perfect results in the balancing of rotatable bodies can be accomplished."

It will thus be seen that the patent which Akimoff assigned did not limit the mechanism to the specific description contained in the specifications nor the drawings, but it is broad enough to cover a substitution of equivalent elements. The defendants being estopped from limiting the patent upon the prior art, the claims in suit must be interpreted so as to include equivalent elements doing the same work in substantially the same way, and accomplishing substantially the same result, even though they differ in name form, or shape. Machine Co. v. Murphy, 97 U. S. 123, 24 L. Ed. 935; Hobbs v. Beach, 180 U. S. 383, 21 Sup. Ct. 409, 45 L. Ed. 586. With equivalents, element for element, in the defendants' machine to the claims of the patent, infringement is established.

Counsel may prepare a decree for an injunction, an accounting for profits and damages, and for costs.