**STUBNITZ–GREENE SPRING CORPO-
RATION v. FORT PITT BEDDING CO.**
No. 8133.

Circuit Court of Appeals, Sixth Circuit.
March 15, 1940.

Arthur Raisch and Stuart C. Barnes, both of Detroit, Mich. (Barnes, Kesselle, Laughlin & Raisch, of Detroit, Mich., on the brief), for appellant.

George Rex Frye, of Detroit, Mich., and T. P. Trimble, of Pittsburgh, Pa. (Swan, Frye & Hardesty and George Rex Frye, all of Detroit, Mich., on the brief), for appellee.

Before SIMONS, ALLEN, and HAMILTON, Circuit Judges.

HAMILTON, Circuit Judge.

The appellant, Stubnitz-Greene Spring Corporation, appeals from a decree hold-

ing United States Letters Patent No. 2,-031,745, issued February 25, 1936, to the assignee-appellee, Fort Pitt Bedding Company, valid and infringed and granting an injunction and accounting.

The patentee-assignor of the patent in suit is Maurice Stubnitz who, at the time of the application and for more than ten years prior thereto, was an employee of the appellee and in charge of development, manufacture and sale of its cushion seats for automobiles and trucks. During his employment, together with three other employees of appellee, he developed and obtained seven patents on automobile and truck seat cushions and assigned them to it.

Appellee, for many years, had an oral agreement with its executive and supervisory employees, including Stubnitz, which later was reduced to writing, that all would cooperate to improve its product and, where possible, file patent applications and assign them to it. Stubnitz was appellee's authorized representative before the Patent Office and assisted its patent attorney in preparing, filing, and obtaining favorable action on applications and also represented it in consulting customers with respect to improvements and changes in the design of its products. He was paid an annual salary and bonus, based in part upon appellee's net earnings.

On June 13, 1933, Stubnitz filed the application for the present patent, and duly assigned it to the appellee in which he described the invention as relating to combination truck and automobile air and spring cushion seats and the like. He stated that these appliances were well-known to the art but those in prior use were relatively complicated in structure and expensive in manufacture, one reason for which was the uniform practice of providing an air-tight joint between the bottom plate of the seat and the lower border frame which necessitated a valve or suitable perforations in the bottom or sides for the restricted inflow and outflow of air. He stated it was usual to have the seat bottom plate joined to the border frame independently by a more or less complex air proof joint and to secure the springs individually to the bottom plate or to both the border frame and the bottom plate.

He claimed his improvement greatly simplified the construction and method of assemblage of the seats and reduced the cost of manufacture to a minimum. In his specifications the lower frame of the seat is provided with a support in the nature of a shelf which supports and secures the bottom plate and springs, the bottom plate resting on the supports and the previously arranged springs placed on the bottom plate. Tongues provided above the bottom plate support are bent over the lower edges of the springs and bottom plate to hold the two in position, which are not air tight but permit restricted inflow and outflow of air around the edges, obviating the necessity of a separate air valve or perforations for this purpose.

The restricted flow of air acts as a snubber when the seat is being used and aids the springs in absorbing road shocks, which permits the use of springs of less strength and makes the cushion softer and smoother for riding and eliminates the joggle which was present in prior art spring cushions. The lower border frame has reinforcing cross bars which connect its opposite sides, with struckout tongues bent over the spring assembly and the bottom plate to hold them against the cross bars.

Because of this arrangement, the bottom plate carries no substantial burden and may be of cardboard fibre or the like. The device could be used without cross bars by substituting for the cardboard a more rigid bottom plate of metal or the like and attaching the springs to it.

The application contained thirteen (13) claims, which were rejected by the patent office in their original form except 1, 2 and 5. Various amendments were filed and the patent finally issued February 25, 1936, with nine claims, 7, 8 and 9 of which are presently in suit. The following claim 9 is typical: "A cushion seat and the like comprising a lower border frame, cross bars bridging opposite sides of said frame, a spring assembly positioned within said border frame, said assembly being arranged with respect to the cross bars so that pressure exerted on the assembly is absorbed substantially entirely by the cross bars, a substantially imperforate seat bottom plate, means for holding the spring assembly to the border frame and securing the said plate thereto, said plate fitting closely within the confines of the border frame for restricting inflow and outflow of air to and from the interior of the seat, said bottom plate being substantially relieved from supporting the weight applied to the cushion seat, stuffing on top of said spring assembly and a cover over said stuffing and secured to the lower border frame."

On February 1, 1935, Stubnitz left the employ of appellee and organized the appellant company under the laws of the state of Michigan and has since been its principal stockholder, president and general manager. Other stockholders furnished some of appellant's capital but have had no part in its management and none of them was experienced in the manufacture of cushion seats for automobiles or trucks. In April, 1935, appellant began the manufacture and sale in competition with appellee of seat cushions for trucks and automobiles.

Its appliances were of four types: (1) A seat comprising a lower J-shaped border frame bridged by cross bars, with six ⅜ inch perforations in a cardboard seat bottom, with coil springs mounted on top of the bottom plate, but not aligned with the cross bars and with a cover over the springs secured to the border frame; (2) a seat comprising a lower border frame of inverted V-cross section, bridged by cross bars, the upper sides even with the upper face of the border frame with an imperforate fibre board bottom plate resting on the cross bars, which overlaps and rests upon the upper edge of the lower bottom frame, with a coil spring assembly positioned upon the fibre board, the springs not directly over or aligned with the cross bars; with a cover over the springs and attached to the frame. This seat was also manufactured with twelve ³⁄₁₆ inch perforations in the bottom plate; (3) a seat consisting of the lower border frame of inverted V-section bridged with cross bars with sectional fibre board bottom plates with airtight joints perforated with 12 holes from ¼ to ⁵⁄₁₆ inches in diameter between and separated by the cross bars with coil springs directly secured thereto by threading the lower ends thereof through perforations in the cross bars with a covering over the springs secured to the border, the air partly flowing into and out of the interior of the seat cushion through the perforations in the sectional bottom plates and around its edges and also to a limited extent through the perforations in the holes in the cross bars through which the ends of the coil springs threaded. The cardboard sectional bottom plate rests on horizontal flanges extending throughout the length of the lower edges of the cross bars; (4) a seat with lower border frame of inverted V-section bridged with cross bars with an imperforate sheet steel bottom plate welded to the bottom faces of the cross bars with coil springs secured directly to the cross bars by threading their lower ends through openings therein and with a covering secured to the border frame. The inflow and outflow of the air is around the edges of the metal seat bottom which carries no substantial weight load.

The lower court found that each of the types infringed upon one or more of the claims in suit.

The idea of having a combination air and spring cushion seat was old to the art and is found as early as 1877 in Rath No. 196,824 and again in British patent No. 185,845 issued to Goode February 16, 1922. The prior art shows a gradual development in this field prompted by the increasing use and greater speed of trucks, the ultimate object sought being a combination spring and air cushion cheaply manufactured and noiselessly operated, with greater comfort to the occupant. Perfect attainment of these objectives was thwarted by the apparent impossibility of automatically regulating the inflow and outflow of air, resulting in uncontrolled and uneven spring action, torn upholstery and tiring discomfort to the driver.

Appellee's device has made an improvement over the prior art by a better synchronization of the inflow and outflow of air with the spring movement. Appellant insists that in view of all the prior art and uses, it clearly appears that the patent in suit is void; that spring and air cushions were old prior to the application and were so recognized by the patentee. It insists that the only novelty in the patented structure is embodied in the idea of striking tongues out of the ends of the cross bars which in use are to be bent over the lower edges of the spring assembly and the bottom plate to clamp the assembly on the plate to the cross bars, which feature is covered in claims 1 to 6 of the present patent and is not relied upon by the appellee for infringement. We are not required to decide this issue.

Appellant, being in privity with appellee's assignor, is estopped to deny patentability. This rule is applicable as between a licensor assignor and licensee assignee whether either be a patentee or applicant only. Foltz Smokeless Furnace Co. v. Eureka Smokeless Furnace Co., 7 Cir., 256 F. 847; Dynamic Balancing Machine Co. v. Akimoff, D.C., 279 F. 285; Swan Carburetor Co. v. General Motors Corp., D.C., 42 F.2d 452, affirmed in 6 Cir.,

44 F.2d 24; Stockland v. Russell Grader Manufacturing Co., 8 Cir., 222 F. 906.

■ However, the principle of estoppel applicable to assignments or licensing of patents or applications therefor has its limits. A conveyance of this character purports to convey and is understood to convey nothing more than the interest or estate of which the assignor or licensor apparently is seized or possessed at the time, and does not operate to pass or bind an interest plainly non-existent unless there are facts and circumstances present showing that the non-existent element was represented by the assignor or licensor to be present and conveyed. The bargain between the parties proceeds upon this view and the consideration is regulated in conformity with it. If otherwise, and the assignee or licensee has contracted for a particular license privilege or monopoly allowed by the state, he must take the precaution to secure himself by proper muniments of title. Estoppel does not extend to that which is obviously old in the art and plainly belongs to the public and under such circumstances may not be used as a basis for a monopoly arising out of an assignment though limited to the assignee and to those in privity with him.

■ It is well recognized that for an estoppel to succeed, it is necessary that the assignor's lack of a present vested estate should not appear in the instrument of assignment as such a disclosure would be internal evidence of its invalidity. Gilmer v. Poindexter, 10 How. 257, 51 U.S. 257, 267, 13 L.Ed. 411. If the assigned application for the patent bears on its face plain evidence that patentability is absent, no other facts or circumstances being present giving rise to the principle of estoppel, there can be no presumption that the assignee was influenced in making the purchase by the representations or recitals of the assignor. The doctrine of estoppel is founded when properly applied upon the highest principles of morality and recommends itself to the common sense of everyone. However, it closes the door of truth in particular cases and is therefore frequently characterized as odious, and often meets with disfavor. Its vitality is only present where but for its application an utterance by a party would convict him of previous falsehood, and authorize him to deny an affirmation upon which persons have dealt and pledged their credit or expended their money. It concludes the truth in order to prevent fraud and falsehood and imposes silence upon a party only when in conscience and honesty he should not be allowed to speak. Facts which are plainly obvious to an assignee at the time he contracts with an assignor cannot give rise to estoppel against the assignor, unless he had conveyed a precise, definite, legal, inchoate right by a solemn assurance which he should not in good conscience be permitted to vary or deny. Westinghouse Electric & Mfg. Co. v. Formica Insulation Co., 266 U.S. 342, 354, 45 S.Ct. 117, 69 L. Ed. 316; Baldwin Rubber Co. v. Paine & Williams Co., 6 Cir., 107 F.2d 350.

■ The question of whether an improvement is the exercise of the faculty of invention distinguished from mere mechanical skill is one of fact. Thomson Spot Welder Co. v. Ford Motor Company, 265 U.S. 445, 447, 44 S.Ct. 533, 68 L.Ed. 1098; Ohmer Fare Register Co. v. Ohmer, 6 Cir., 238 F. 182. A fortiori the question of whether estoppel is applicable as between assignor and assignee is also a question of fact. Rajah Auto Supply Co. v. Belvidere Screw & Machine Co., 7 Cir., 275 F. 761. The authorities all agree upon the proposition that the findings of fact by the lower court who saw and heard the witnesses and made a critical examination of the exhibits are entitled to great weight and are to be taken as presumptively correct and, unless obvious error has intervened in applying some principle of law or some important mistake has occurred in weighing the evidence, the decree will not be reversed. Furrer v. Ferris, 145 U.S. 132, 134, 12 S.Ct. 821, 36 L.Ed. 649. We cannot say from an examination of the evidence that the lower court misapplied the law applicable to estoppel or made any important mistake in weighing the evidence in relation thereto.

It is contended by appellant that when Stubnitz left appellee's employment, the claims disclosed in his application had been rejected by the patent office, except 1 and 6, and that when appellant commenced to manufacture the alleged infringing spring construction, none of the claims in suit had been stated or allowed by the patent office, and after it had made and placed on the market its cushion seats, appellee presented to the patent office the claims in suit and endeavored to have them read directly on appellant's device and for this reason the doctrine of estoppel is inapplicable and to apply it in this action would be

inequitable. This contention must be rejected.

In construing the scope of the assignment of an invention represented not by claims allowed but by an application, we think the rule to be that everything fairly disclosed by the application and specifications and the drawings, as within the inventive concept, is also within the assignment, so that even though the claims originally presented to the patent office while the assignor was in the employ of the assignee differ from the claims thereafter allowed, if the latter fairly disclose the invention as deduced from the description they are likewise within the assignment and within the scope of estoppel, and so applying to the assignment contract the same rules by which other contracts are interpreted the assignment covers all that is disclosed in claims 7, 8 and 9 in suit.

Appellee made no amendment to either the specifications or drawings of its assignor's application. It therefore follows that no matter how broad the applicant made the original description of his invention, the limitation of the claims in suit left the alleged invention within the preferred range of the original specifications, and these claims are within the preference. Cleveland Foundry Co. v. Detroit Vapor Store Co., 6 Cir., 131 F. 853; Kelsey Wheel Co. v. Universal Rim Co., 6 Cir., 296 F. 616. The amended claims injected no new matter which is not found in the specifications or drawings and their addition is no departure from the alleged original invention.

The estoppel applicable to the appellee does not prevent it from denying infringement (Noonan v. Chester Park Athletic Club, 6 Cir., 99 F. 90; Westinghouse Electric Manufacturing Co. v. Formica Insulation Co., supra; Foltz Smokeless Furnace Co. v. Eureka Smokeless Furnace Co., supra), and to determine this issue it is admissible to show the state of the art involved that the court may ascertain what was assigned, and also for the purpose of determining the primary or secondary character of the improvement or invention described in the assigned application, and also to determine the extent to which the doctrine of equivalents may be invoked against the assignor.

Where the claims depend, as do those in suit, upon the novelty of the specific combinations to place in practical use the inventor's idea, the means being old, the range of equivalents is so narrowed as to exclude everything not substantially identical with that used by the patentee. Baldwin Rubber Co. v. Paine & Williams Co., 6 Cir., 99 F.2d 1. The device is for a combination, and the omission of any one element or arrangement avoids infringement, unless an equivalent is supplied. Rowell v. Lindsay, 113 U.S. 97, 102, 5 S. Ct. 507, 28 L.Ed. 906. In the light of these principles, we are to inquire whether the appellant used the combination described in the application for the patent in suit.

Prior to Stubnitz's disclosure, combination air and spring cushion seats were in general use and the primary purpose of the seat designed by him was to free the bottom plate from weight load, leaving it solely for the control of air pressure, transferring the weight to the cross bars, cheapening construction, eliminating clicking noises, and making a more comfortable seat.

Appellant contends that the patent is for an improved combination which consists in arranging different portions of the seat and combining them together in the manner stated in the specifications for the purpose of producing a certain effect and none of the parts referred to are new and none are claimed as new nor is any portion of the combination less than the whole claimed as new or stated to produce any given result, and that the end in view is proposed to be accomplished by the union of all arranged and combined together in the manner described, which combination composed of all the parts mentioned in the specifications and arranged with reference to each other and to other parts of the seat in a manner therein described is the improvement and the thing patented. It argues from this that its appliances are substantially different from those described in appellee's patent.

The differentiations pointed out in the argument at bar are two; i. e., perforations in the bottom plate and springs scattered promiscuously over the bottom plate with no pretense to alignment with the cross bars.

It is true that in some of appellant's alleged infringing devices, perforations were put in the bottom plate for the purpose of additional air vents. Claim 9 in suit calls for only "a substantially imperforate seat bottom plate." In our opinion infringement is not overcome by the addition of the holes for venting functions,

which leave substantially an imperforate bottom plate.

The evidence shows that appellant positioned its spring assembly within the border frame and above the cross bars, so that they alone absorbed spring impact, leaving the bottom board free from weight carrying load. In some of its appliances, the springs were not in alignment with the cross bars, but were connected in horizontal rows by U-shaped cross braces at both top and bottom, which produced effective co-action and centered the load on the cross bars, in the same form and manner as though in direct alignment and relieved the bottom plate of weight load.

Claim 8 in suit calls for: "A spring assembly positioned within the limits of said border frame and arranged over the cross bars so that pressure exerted on the springs is absorbed substantially entirely by cross bars."

 Despite the rearrangement by appellant of the spring assembly and the perforations in the seat bottom, we find its devices are substantially identical with those described in the patent, operating upon the same principle and accomplishing the same result in substantially the same way. Its slight changes in form are merely colorable departures from appellee's structure and do not avoid infringement. Sanitary Refrigerator Co. v. Winters, 280 U. S. 30, 43, 50 S.Ct. 9, 74 L.Ed. 147.

The patent office history shows that original claim 9 was rejected. It reads: "9. In a cushion seat and the like provided with a lower border frame, a bottom plate positioned in said border frame and a spring assembly resting on top of said bottom plate, means for supporting said plate and spring assembly on said border frame, and means for clamping the plate and spring assembly to the support, the bottom plate being spaced from the border frame to provide a passage for air between the edges of said plate and said border frame."

This claim was rejected by the examiner on the British patent to Goode (Holyport) 185,845, and thereafter appellee amended it by inserting the phrase "a substantially imperforate seat bottom plate."

 In the light of this history, appellant urges that the patentee must be confined to the preferred form of his specifications; that is, to a bottom plate, which is imperforate within the limited definition he has given the word in his amended claim. It is true that limitations introduced by amendment to avoid rejection on the prior art must be strictly construed against the inventor (Sargent v. Hall Safe & Lock Co., 114 U.S. 63, 5 S.Ct. 1021, 29 L.Ed. 67), and, however meritorious the invention, the patentee cannot claim as an equivalent something he relinquished in order to secure his patent. Weber Electric Company v. E. H. Freeman Electric Company, 256 U.S. 668, 677, 41 S.Ct. 600, 65 L.Ed. 1162; I. T. S. Rubber Company v. Essex Rubber Company, 272 U.S. 429, 443, 47 S.Ct. 136, 71 L.Ed. 335.

 We do not construe the file history to estop appellee from claiming as an equivalent an appliance with a few perforations in the bottom plate, which do not substantially control the inflow and outflow of air into the cushion. The claim does not entirely exclude the use of perforations. The word "substantially" as used in the claim as we construe it, was intended by the patentee to avoid any appearance of claiming the ability to exactly synchronize air and spring action without the use of perforations in the bottom plate. He wished to produce certain economies and superiorities in the operation of the spring assembly without the use of a load carrying bottom plate which was substantially imperforate, but he intended to permit the use of slight perforations to ease the rigidity of the seat. It is manifest that the functional effect of the device was not altered by the use of slight perforations for softening purposes.

Viewing the claims in suit as limited by the proceedings in the patent office, the finding of fact of the lower court that appellant's devices infringed is not clearly erroneous. Rule 52 of Rules of Federal Procedure, 28 U.S.C.A. following section 723c.

The decree of the District Court is affirmed.