### AKIMOFF et al. v. DYNAMIC BALANCING MACH. CO. et al.

### DYNAMIC BALANCING MACH. CO. et al. v. AKIMOFF et al.

(Circuit Court of Appeals, Third Circuit.  December 15, 1922.)

#### Nos. 2863 and 2902.

1. **Patents ⚖328—1,296,610, claims 12 and 13, for balancing machine, held not infringed.**

   Patent No. 1,296,610, claims 12 and 13, for a machine for ascertaining and correcting the static and the dynamic unbalance of rolls and other revolvable appliances, *held* not infringed by a machine in which the body to be tested was a necessary element to the mechanical action of the testing device.

2. **Patents ⚖241—Mere identity of result is not infringement.**

   Mere identity of result is not the test of infringement, but substantial identity of means and method.

3. **Patents ⚖328—1,296,610, claims 15 and 16, and 1,296,606, claims 21, 22, 23, 26, 29, for balancing machine, held void as amendments**

   In letters patent No. 1,296,610, claims 15 and 16, and in patent No. 1,296,606, claims 21, 22, 23, 26, and 29, all covering machines for ascertaining the static and dynamic unbalance of rotating bodies *held* void because, being amendments, they were indefinite, too broad, or not verified by the inventor, or were broader than the invention originally .disclosed.

Cross-Appeals from the District Court of the United States for the Eastern District of Pennsylvania; J. Whitaker Thompson, Judge.

Suit in equity by the Dynamic Balancing Machine Company and others against Nicholas W. Akimoff and another for infringement of patents.  From so much of the decree (279 Fed. 285), as held two of the claims of one patent valid and infringed, the defendants appeal, and from that portion of the decree which held other claims invalid, complainants appeal.  Decree reversed on defendants' appeal, and affirmed on complainant's appeal, and cause remanded, with directions to dismiss the bill.

James C. Wobensmith and Cyrus N. Anderson, both of Philadelphia, Pa., for appellants.

Robert M. Barr and Latimer P. Smith, both of Philadelphia, Pa., for appellees.

Before BUFFINGTON and WOOLLEY, Circuit Judges, and BODINE, District Judge.

#### No. 2863.

BUFFINGTON, Circuit Judge.  [1] This is an appeal from that part of the decree of the District Court holding claims 12 and 13 of

letters patent No. 1,296,610, valid and infringed. The patent concerns machines for ascertaining the static or standing and the dynamic or running unbalance of rolls and other revolvable appliances.

Taking, for illustration, a roll: It may have two kinds of unbalance. If there is a superabundance of material in any part of its circumferential plane, the roll will not stand when placed, but will turn over until the heavier part forces it to rest at the lowest level. This is called static or standing unbalance, and it is clear that, if a roll thus statically unbalanced is revolved at high speed, such unbalance will evidence itself detrimentally. There is also what is called dynamic or running unbalance. This is where a roll which will stand in whatever position it is placed, and therefore has no static or standing unbalance, may, when revolved at high speed, wobble in its bearings by reason of dynamic or running unbalance. This unbalance is caused by there being a superabundance of metal at one side of the longitudinal center of the roll. For it is clear that, if a roll heavier at one end than at the other is revolved at high speed, there will be a heavy, needless and highly objectionable strain on the roll bearings.

[2] Now the purpose and the accomplishment of both the plaintiffs' and the defendants' machines is to locate in rolls and other revolvable bodies these two objectionable factors of dynamic and static unbalance, and the question here involved is whether plaintiffs and defendants secure that result by substantially the same means and methods, for the law is clear that mere identity of result is not the test of infringement, but substantial identity of means and method.

Addressing ourselves then to the patent in controversy and using figure 1 thereof and attached hereto as illustrative of plaintiffs' disclo-

FIG. I. OF PATENT IN SUIT 1.296.610.

sure, we have a composite testing machine in which there is a bed, *3*, which is called in the specification, an oscillator, secured at one end to the supporting bed by the hinge, *4*, and supported at its other end by the compression spring, *5*. On the bed of the machine is located—*36*,

*38, 39*—a balancing unit consisting of a spool or weight adapted to be shifted off center to counteract the static or dynamic unbalance for which the body is being tested in either of two positions of test which are at right angles to each and come about in this way. On such oscillator there is a turntable adapted to carry the roll or body under test, and so arranged that the axis of rotation of the body under test may be shifted so as to make it revolvable in a plane either parallel with, or perpendicular to, the axis of the balancing unit above referred to.

Without going into details, we may say the operation of this machine and the sequence of workings necessary to mechanically remove the objectionable metal of the roll, etc., are correctly summarized by the witness Stuart, professor of mechanical engineering at the Naval Testing School at Annapolis, as follows:

"The machine is operated, certain adjustments are made in the machine, and the static unbalance is determined by certain readings from a dial. The static balance is determined by the readings, and *must then be corrected in the body.* Q. This body is taken out of the machine? A. *The body must be removed from the machine; the static unbalance must be corrected. The body must be placed back in the machine;* the machine operated; certain other adjustments made; the dynamic unbalance determined; the body taken out of the machine; and the dynamic unbalance corrected."

And that this was the extent of the disclosure of the patent is evidenced by the specification which says:

"The object of the invention, as reduced to practice in the specific manner hereby disclosed is to provide a mechanism operative to perfectly balance a rotatable body statically while revolving; to indicate the degree of lack of balance inherent within said body, and the location and amount of material necessary to be removed therefrom, or added thereto; to provide a mechanism capable of being quickly and easily transformed into a machine operative to perfectly balance a rotatable body dynamically while revolving; to provide a dynamic balancing machine operative to indicate the degree of such balance, and the location and amount of material necessary to be removed therefrom or added thereto; to provide in such a universal machine a balancing unit comprising a radially movable weight, operative to revolve in synchronism with the body being tested, adjustable into different angular positions with respect to said body, rotatable upon an axis parallel with the axis of said body when arranged for dynamic balancing and upon an axis in a plane perpendicular to the axis of said body when arranged for static balancing, and vibratable upon and with an oscillator forming a common support both for said unit and said body; and to provide further details of construction and operation as hereinafter described."

It will thus be seen that the plaintiffs' means and method show a composite, complete, workable machine adapted in one operation to locate static unbalance, necessitating thereafter a removal of the body to correct this ascertained static unbalance; then a return of the body to the machine where dynamic unbalance is located when the body is revolved at another angle.

Now this same final result is obtained by the defendant's mechanism, but its means and methods differ. In the first place, the defendants have no machine, as such, complete and in itself capable of operation, for the roll or body being tested is itself required to function and operate, in order to make the device work as a mechanical whole. In other words, we have the unusual situation of the body which is being

tested, being an absolutely necessary element to the mechanical action of the testing device. Referring to the sketch attached hereto, it will be

seen that *1* and *1'* are respectively independent and unconnected pedestals, one of which is adapted to allow its load to oscillate; the other not. On each pedestal are rollers adapted to carry an end, *8*, of the superimposed roll, *7*, and facilitate its rotation by the motor and belt, *14*, *15*, which is in engagement only with the nonoscillating end of the roll. To the axle of the roll is attached, *11*, *12*, *13*, the clamp provided with weights which may be shifted radially.

The operation of the machine and the points wherein it differs from the plaintiffs' is, in our judgment, properly summarized by the witness Stuart, already quoted, who says:

"The essential difference of the two machines is that this machine (plaintiffs') can determine separately the static unbalance; the body must be taken from the machine; the static unbalance must be corrected; the body put back in the machine; the dynamic unbalance determined and corrected separately. The defendants' machine provides for a determination at the same time of both static and dynamic unbalance, if you want to make such a division, *although this machine, when operating, the defendants' machine, does not distinguish between static and dynamic unbalance.* In this machine (plaintiffs'), if the body is removed, the machine may be operated, and in that condition, in which the balance would exist in the body, with the machine operating, when the body was removed from the machine, the machine would be out of balance. In the defendants' machine, if the body is removed from the machine, no essential element of the machine remains. There is nothing to operate. There is nothing to be out of balance, and there is no similarity whatever between the two machines, when the body is out of the machine. In other words, defendants' machine consists of two pedestals to rotate a body, on which certain readings may be taken, which when placed in the mathematical formula, which I do not recall, because an engineer does not have to remember formulæ, they are available as part of his professional work, but he does not have to remember them. As a result of those calculations the amount of unbalance is determined. Q. So that you are satisfied that the two machines are radically different in principle and manner of operation? A. My opinion is that the two machines are different in the way in which they use the laws of nature to accomplish a given result."

Regarding this patent as specifically disclosing the plaintiffs' type of machine, and disclosing nothing as to any other type, satisfied, as we

are, that claims 12 and 13 were granted to protect that structure and substantial equivalents thereof, we find neither call nor warrant[1] for our applying those claims to the defendants' device.

The part of the decree of the court below here on this appeal is therefore reversed.

## No. 2902.

[3] This is a cross-appeal from that part of the decree of the District Court holding claims 15 and 16 of letters patent No. 1,296,610 void because, being amendments, they are indefinite, too broad, and were not verified by the inventor, and claims 21, 22, 23, 26 and 29 of letters patent No. 1,296,606 void because, being amendments, they are broader than the invention originally disclosed and were not verified by the inventor. These claims were presented more than a year after the applications had been made and assigned (and in one instance after the application had been forfeited for failure to pay the final fee and had been revived) on the contention made by the assignee owner that they were necessary to cover the inventions' disclosed and to protect them adequately. This position the defendants met by the opposing contention that the amendatory claims were filed purposely to carry the invention back to an early date and, in the light of later disclosures, greatly to broaden their scope. On this issue the parties introduced much conflicting testimony. A careful study of this testimony has led us to the conclusion reached by the learned District Judge, whose decree

---

[1] See testimony of plaintiffs' expert, Lungren, record pp. 109, 110, as follows:

"XQ. Now, will you tell us where you find on defendant's machine any statical adjustable means which is carried by the oscillatory mounting? Please point out where you find on that oscillatory mounting any statically adjustable means; there is none whatever? A. No; there is none.

"XQ. Now, secondly, there are no connections whereby the last means may be moved in harmony with the body on the first means; no question about that? A. No.

"XQ. So that it can be positively stated, then, according to your understanding, that there are two elements in claim 12 which are utterly lacking in defendant's machine? A. Well, the function—

"XQ. I am not asking you about the function. I am asking you—

"Mr. Barr: Let him answer the question.

"The Witness: The elements are not all there; a number of them.

"By Mr. Wobensmith:

"XQ. That is all I want to know. Now, turning to claim 13. Now claim 13 also calls for the oscillatory mounting, doesn't it? A. Yes.

"XQ. It also calls for the means for rotatably supporting a body to be tested and carried by said mounting. Now, is that the identical language with the corresponding element of claim 12? A. Yes.

"XQ. That is the element in claim 12 which you said was lacking in defendant's machine? A. Yes.

"XQ. Claim 13 also calls for rotatably adjustable means carried by the mounting, or, rather, it calls for rotatable radially adjustable means also carried by said mounting, which is a full equivalent of the element in claim 12, which is described as statically adjustable means. A. Yes.

"XQ. So, therefore, this element of claim 13 is also lacking in defendant's structure, is it not? A. The statically adjustable mounting is not lacking.

"XQ. But carried by the mountings is lacking? A. Yes.

"XQ. So, there is no question about it? It is not present in defendant's machine? A. No."

on these issues we affirm for the reasons given and upon the authorities cited in his opinion.   279 Fed. 285.

It follows, therefore, that, in reversing the decree on the defendants' appeal and affirming the decree on the plaintiffs' appeal, the cause must be remanded, with directions to dismiss the bill with costs.