## STOEHRER & PRATT DODGEM CORPORATION v. LUSSE BROS.

(Circuit Court of Appeals, Third Circuit. July 20, 1925.)

No. 3262.

1. Patents ⬅➡234—Test of infringement substantial identity of means or methods.

Test of infringement of an amusement device is not identity of result, but substantial identity of means or method, as there can be no patent for fun, though of a new kind, but only for means of producing it.

2. Patents ⬅➡328—1,339,299, for amusement device, if valid, held not infringed.

Stock patent, No. 1,339,299, for motor-driven car amusement device, if valid, held not infringed.

3. Patents ⬅➡328—1,373,108 and 1,467,959, for motor-driven car amusement device, held valid, but not infringed.

Stoehrer patents, Nos. 1,373,108 and 1,467,-959, for motor-driven car amusement device, held valid, as involving invention, but not infringed.

4. Patents ⬅➡328—1,478,979, for a system of electrically charged ceiling and floors for transmitting power to amusement vehicles on the floor, held not to involve invention.

Stoehrer patent, No. 1,478,979, for a system or device for electrically charged ceilings and floors for transmitting power to amusement vehicles on the floor, held invalid, as not involving invention.

5. Patents ⬅➡21, 27(1) — No invention in transferring system to amusement art, or substituting wire mesh for solid metal.

Transferring a system from other arts to the amusement art, or substituting wire mesh for solid metal, does not involve invention.

Appeal from the District Court of the United States for the Eastern District of Pennsylvania; Dickinson, Judge.

Suit by the Stoehrer & Pratt Dodgem Corporation against Lusse Bros., a partnership. Decree for defendants (1 F.[2d] 793), and complainant appeals. Affirmed.

D. P. Wolhaupter, of Washington, D. C., and E. J. Buckley, of Philadelphia, Pa., for appellant.

Howson & Howson, of Philadelphia, Pa. (Charles H. Howson, of Philadelphia, Pa., of counsel), for appellees.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

WOOLLEY, Circuit Judge. The complainant, by its bill in equity, charges that the respondents have infringed Letters Patent No. 1,339,299 issued to John Jacob Stock and Letters Patent No. 1,373,108, No. 1,467,-959 and No. 1,478,979 issued to Harold Stoehrer and Max Stoehrer and acquired from the patentees by purchase and assignment. The claims in issue are 3 and 4 of the first patent, 1 and 9 of the second, 1 and 2 of the third, and all of the fourth

The respondents challenge the validity of the claims on several grounds, including anticipation and lack of patentable invention, and deny infringement because of limitations by their terms and limitation by the prior art to the specific construction. Holding the claims invalid for want of patentable invention, the court dismissed the bill. (D. C.) 1 F. (2d) 793. The complainant appealed.

The inventions of the patents are addressed generally to the amusement art and particularly to those of its phases which create excitement from situations seemingly dangerous though entirely safe and which, in consequence, provoke mirth and laughter. The devices of the patents are tub-shaped cars large enough to seat several persons and designed to afford them a ride. The prior art held cars of that kind, used for that purpose; one, the "roller coaster," definitely guided and directed not by the occupants but by railings and tracks, and propelled by the force of gravitation; the other, the "roulette wheel," which was a large rotating disc surrounded by a bowl-like structure with comparatively steep stationary sides. Cars of the tub type, having universally rotatable wheels or casters, when placed on the rotating disc were thrown in unexpected directions and in all sorts of positions upon the stationary sides of the bowl, and on de-

scending to the disc they were thrown out again, and so on through the operation. These cars were propelled by centrifugal force and were not guided at all.

Though successful as a mirth-creating medium, the latter device developed difficulties in operation which made it commercially impracticable. Stock conceived the idea of a car of the tub type for use on the plane of a floor which would overcome these difficulties and retain all the pleasure incentives of a ride in the tub of the roulette wheel. He provided a car driven by a motor, with its sides protected by collision bumpers, and its movement subjected to the control of one of the riders.

[1, 2] Stock was perhaps the first to invent a motor-driven car which gives amusement to its patrons because of its eccentric, yet more or less manually controlled, movements, involving inevitably the bumping of one car against another when many are on the floor, thereby causing harmless concern and seeming risk when, in truth, the whole thing is safe. Assuming that Stock invented a device which was novel and which is useful in the sense of affording amusement for which people will pay, the invention, we think, is limited to the device; it does not extend to its effect upon the minds of those who use it. Stock cannot have a patent for the result of his invention; that is, he cannot have a patent for fun, or for fun of a new kind. He is entitled to a patent only for the means of producing it. And as to infringement, mere identity of result is not decisive. The test is substantial identity of means or methods. Westinghouse v. Boyden Power Brake Co., 170 U. S. 537, 18 S. Ct. 707, 42 L. Ed. 1136; Akimoff v. Dynamic Balancing Machine Co. (C. C. A.) 285 F. 480.

The means (presently described) by which the respondents obtain practically the same results are, in our opinion, substantially different from those embodied in the Stock invention. We cannot accede to the complainant's contention that, though Stock may have been a pioneer in the art, his invention covers all amusement cars of the tub type with power means of any kind, operated without guides or tracks of any kind. His invention is limited to what he did and his patent monopoly to what he claimed and disclosed. We shall briefly dispose of this (by no means close) issue of infringement by quoting a claim in suit and showing which of its several elements the respondents embody, and do not embody, in their alleged infringing device:

"An amusement device, including a vehicle and power means for driving such vehicle [which the respondents have], such driving means being so arranged as to permit such vehicle to be moved forwardly [which the respondents have], rearwardly [which the respondents do not have], clockwise, anti-clockwise [which, in the sense of the patent, the respondents do not have], and in either direction around points in the edge of such vehicle held substantially stationary, whereby to act as pivots [which the respondents do not have]."

[3] The few cars built under the Stock patent were not successful. Harold Stoehrer and Max Stoehrer then came along and, seeing money in Stock's idea of stimulating the excitement and mirth of people by the uncertainty, eccentricity and mystery in the movements of a car of this kind, invented a rather clever mechanism to produce that result without the difficulties which existed before. No. 1,373,108 and No. 1,467,959. They took Stock's motor-driven car, but, contrary to Stock, they deprived the inexpert operator of all control over its movement, and, by mechanism hidden beneath the floor caused the car to be drawn, unexpectedly and mysteriously, hither and thither in any and every direction. They accomplished this by "a driving wheel which was also a steering wheel." This is the cause of all that happens and is the essence of their invention. Strictly speaking there is no steering wheel at all, but at the lower end of the shaft of the steering means, which is operated by the driver of the car (and which, for want of a better word, we shall term the "tiller"), there is a steering *gear* connected by a link chain with the driving means, which is a motor-driven traction wheel eccentrically positioned in the rear of the vertical axis of the device. With the whole mechanism assembled beneath the floor of the car, the operator cannot see what occurs in response to his movement of the tiller. When he turns the tiller, for example, to the right, with the purpose of making the car go in that direction, the effect of his movement is not to turn a steering wheel to the right but to turn the steering *gear* to the right, which, through the chain connection, turns the motor-driven traction wheel to the right. Being eccentrically positioned and when thus turned out of line with the horizontal axis of the car, the traction wheel throws the car in a wholly unexpected direction—forward, backward, clockwise, or anti-clockwise—"every which way"—according to the extent of the turn of the tiller. Aid-

ed by swiveled wheels or casters, the car inevitably runs into and bumps others cars; and bumping is increased all the more when the driver, in confusion or excitement, further shifts the tiller in an endeavor to correct the car's erratic movements. Power is supplied the motor through a control (or trolley) whose upper part is in contact with an electrically charged ceiling and whose lower connections extend to and are in contact with an electrically charged floor. The complainant exploits this car under the name of "Dodgem," although more correctly its action is to bump them.

Obviously the keynote of the Stoehrer device is the amusement which is derived from its "freaky and funny motions," arising from an entire absence of control by the ordinary driver, who, because of his ignorance of the mechanism, cannot guide it.

The alleged infringing car which the respondents make, and exploit under the name of "Skooter," is based upon a different mechanism and is intended for a different though related purpose. Its main purpose, of course, is to afford amusement. But we think that it affords amusement of a different kind and certainly in a different way. In its body the respondents' car is enough like the Stoehrer car to be an imitation but under its floor it has (besides fixed slightly elevated side-supporting wheels—No. 994,-715—as distinguished from the Stoehrer swiveled casters) two operative wheels, one an ordinary front steering wheel positioned at the base of the tiller shaft; the other a fixed motordriven traction wheel. While the two wheels are in a way connected, they are not so connected as to make the movement of one change the position of the other, as in the Stoehrer mechanism. They are not, as in Stoehrer, a "combined guiding and traction unit." The steering of the car is effected by the steering wheel alone and the movement of the car is effected by the traction wheel alone. Operatively, each wheel is independent of the other. While the steering wheel moves in response to the movement of the tiller, the traction wheel is in fixed bearings and remains always in one position. It never becomes a dirigible traction unit. When the driver wants to start, he draws the tiller toward his breast. This turns on the current and the car moves. Thereafter he can guide it just as one guides a motor cycle and the car responds to his will. The result is that if only one car were on the floor he could accurately control its movements, but when many cars are on the floor, either because of inexpert driving or

of positive intention of the operators, they inevitably bump into one another and in this way produce the desired pleasure and mirth. The pleasure is such as arises from the Stoehrer car and, in addition, it is of the kind that comes to one in driving a motor vehicle and feeling the engine respond to the will.

The respondents' car is, in form and operation, a low motor-driven vehicle with a seat large enough for two. It differs from the car of the Stoehrer patents in that its keynote is not absence of control but is presence of control. No principle new to motor-driven vehicles is employed. It is a diminutive motorcar. It is destitute of novelty except in appearance. Invention is not even claimed for it. If the respondents' car is the car of the Stoehrer patents, as the complainant insists it is, then, applying the logic of the rule that a device which infringes, if later, would anticipate, if earlier, it would follow that the devices of the patents are themselves devoid of invention. In discussing the contesting devices the learned trial judge expressed a doubt (much to the concern of the complainant) as to whether there is here any field for invention, not meaning, as we read the opinion, that he doubted there is a field for invention anywhere in the amusement art, but intending to convey the thought that in the devices both of the respondents and of Stoehrer there was no origination beyond that of making a toy automobile. We agree this is all the respondents' car is, but we think the Stoehrer car is something different, both in structure and purpose, and that, within its narrow field, invention is involved.

We cannot, however, give to the invention the position nor to the claims the scope demanded by the complainant. It says that the second Stoehrer patent—the first applied for—discloses the generic combination, while the first Stoehrer patent—the last applied for—discloses the specific combination and that the invention of the second patent generically covers "any kind of a motor-driven traction unit having any kind of an element *adapted* to travel upon the floor in any direction." The Skooter car has no element which makes it travel in "any" direction, if we construe the word "any" to mean "every." Its backward movement is caused only by bumps, and it is not capable of abrupt sidewise movements. We are satisfied that the claims are not entitled to the breadth insisted upon, or to a breadth that covers the respondents' device.

In view of these findings it will not be necessary to consider and decide the defense of double patenting.

[4, 5] The fourth Stoehrer patent (No. 1,478,979) is for a system and a device including, in combination with a connecting medium, an electrically charged ceiling and floor as the terminals of the circuit through which power is supplied to the car, the ceiling, under the narrow claims, consisting of wire mesh.

Electrically charged ceilings and floors for the purpose of transmitting power to vehicles intended to move on a floor in any direction are old in the commercial field. They are also inferred from the means employed to obtain power for the device of the Stock patent applied for in June, 1919, and they appear in the Stoehrer patents applied for in March and December, 1920. This may not be an answer, yet they are found in various forms in United States Letters Patent No. 686,330 to Porter, No. 840,422 to Bassett, No. 421,887 to Adair, and in the French patent No. 476,132 to Vila.

If any invention be present in the system or device of this patent it consists in transferring the system from other arts to the amusement art, or in substituting wire mesh for solid metal. We cannot discover invention in either. Hotchkiss v. Greenwood, 11 How. 248, 13 L. Ed. 683; Hicks v. Kelsey, 18 Wall. 670, 21 L. Ed. 852; Peters v. Active Mfg. Co., 129 U. S. 530, 9 S. Ct. 389, 32 L. Ed. 138; Morton Trust Co. v. American Car & Foundry Co., 169 F. 109, 94 C. C. A. 588.

Summarizing our conclusions, the claims in suit of the first patent (No. 1,339,299) to Stock, if valid, are not infringed, those of the next two patents (Nos. 1,373,108 and 1,467,959) to Stoehrer are valid and not infringed; and the last patent (No. 1,478,979) to Stoehrer is invalid.

The decree of the District Court is affirmed.